STATE of Wisconsin, Plaintiff-Respondent,

v.

Glover B. JONES, Defendant-Appellant.†

Court of Appeals

*No. 01–1398–CR. Submitted on briefs February 12, 2002.—Decided July 25, 2002.*

2002 WI App 196

(Also reported in 651 N.W.2d 305.)

† Petition to review dismissed 10-21-02.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Mark D. Richards* and *Christy M. Hall* of *Mark D. Richards, S.C.*, Racine.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Gregory M. Weber*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Vergeront, P.J., Roggensack and Lundsten, JJ.

¶ 1. LUNDSTEN, J. Glover Jones was tried before a jury and convicted of possession of a controlled substance with intent to deliver and possession of a controlled substance without the required tax stamps. Jones raises the following challenges: (1) evidence should have been suppressed because a search warrant affidavit failed to establish probable cause and contained purposefully false information; (2) the drug tax stamp law is unconstitutional because it violates the Fifth Amendment's prohibition against compelled self-incrimination; (3) the application of the drug tax stamp law in this case violates double jeopardy; (4) the evidence was insufficient to support the verdicts; (5) the trial court improperly admitted hearsay testimony; and (6) the interest of justice requires a new trial. We affirm on all issues.

## I. Challenge to Search Warrant Affidavit

¶ 2. Police executed a search warrant at a property owned by Jones in Crystal Lake, Marquette County. Using the warrant affidavit supporting this first search, and additional information obtained during and after the first search, police obtained a second search warrant for a second property owned by Jones in Neshkoro, Marquette County. While executing the second search warrant, police discovered a large quantity of marijuana. Jones contends the evidence obtained during both searches should have been suppressed because the warrant affidavit supporting the first search was inadequate.[1]

---

[1] Jones argues that the second search was illegal because it was based on the same inadequate affidavit used to support the first search and on evidence illegally obtained during that first search. Accordingly, the suppression issue in this case turns on

326

¶ 3. Jones makes two arguments attacking the affidavit supporting the first search warrant: first, the affidavit fails to establish the reliability of the information supplied by the confidential informant and contains stale information, and second, the State purposefully included false information in the affidavit. We will provide background information and then address Jones's arguments.

## A. Background

¶ 4. On January 5, 1999, the police submitted an affidavit in support of a search warrant for a property Glover Jones owned in Crystal Lake, Marquette County. The affidavit included the following information. In July 1998, Drug Enforcement Administration (DEA) agents spoke to a confidential informant in Illinois. The informant identified Glover Jones as a "large-scale" drug trafficker in Chicago, Illinois, who owned property in Wisconsin and that Jones used his Wisconsin property to conceal narcotics. The informant gave a phone number for the property and stated that Jones owned a white, refrigerated semitrailer with a hidden compartment which Jones created by removing insulation from the semitrailer's roof. The informant alleged that Jones transported up to fifty kilograms of cocaine in the hidden compartment. In the past, the informant provided information to Chicago law enforcement officials that led to a search warrant and the recovery of items identified by the informant. The Wisconsin phone number provided by the informant was registered to Jones, and the related service address was W1966 Deerborn Drive in the town of Crystal Lake.

the validity of the first search and we need not separately address the legality of the second search.

Jones had been arrested in 1971 for possession of marijuana. Jones had received a speeding ticket and a warning for speeding in August and October 1998, respectively, both in Marquette County. On December 29, 1998, a police officer drove past Jones's Crystal Lake property and observed a white, refrigerated semitrailer parked on the property. The officer observed tire tracks in the snow on the driveway. The tracks were in snow that had fallen about two weeks prior. The affidavit also included several general statements about drug traffickers based on training and experience, including that they often conceal drugs, money, and records of their transactions in their residences.

¶ 5. The same day it was applied for, January 5, Circuit Court Judge Richard O. Wright issued a search warrant for Jones's Crystal Lake property and police executed the search warrant. The police found evidence of drug trafficking and used this evidence, in conjunction with the affidavit supporting the first search and additional information obtained after the first search, to secure a second warrant to search a property owned by Jones in Neshkoro, Marquette County.

¶ 6. In addition to information in the original warrant affidavit, police supplied the following information to Judge Wright in support of their request for a second search warrant. In the semitrailer on the Crystal Lake property, officers found a hidden compartment created by a suspended ceiling. In the residence, officers found marijuana and firearms, including a shotgun with its serial number scratched off. A county highway employee, who helped remove the semitrailer from Jones's property, told the officers that Jones also owned property at 425 South Main Street in Neshkoro, Marquette County, and that he had seen fresh tracks leading to the property. Police spoke with next-door

neighbors of Jones's property in Neshkoro, who said Jones owned the Neshkoro property and that Jones had been to the property about Christmas time two weeks prior with another man. They said Jones brought some unidentified "property" to the house at that time.

¶ 7. When police executed the second search warrant, they found thirty-two bricks of marijuana weighing approximately 291 pounds inside a locked, freestanding refrigerated unit. The bricks had grid marks on them comparable to the grid in the hidden compartment in the semitrailer.

¶ 8. Jones moved to quash both search warrants and suppress the evidence obtained. The circuit court denied the motion.

*B. Reliability of Confidential Informant Information and Staleness*

*1. General Principles of Law and Standard of Review*

¶ 9. Jones first asserts that the warrant affidavit supporting the first search fails to establish probable cause because it contains unreliable and stale information.

¶ 10. A search warrant may issue only upon probable cause. Probable cause supporting a search warrant is determined by the totality of the circumstances. *State v. DeSmidt,* 155 Wis. 2d 119, 131, 454 N.W.2d 780 (1990).

A finding of probable cause is a common sense test.

"The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him,

329

including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."

*State v. Ward*, 2000 WI 3, ¶ 23, 231 Wis. 2d 723, 604 N.W.2d 517 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The warrant-issuing judge may draw reasonable inferences from the facts asserted in the affidavit. *State v. Benoit*, 83 Wis. 2d 389, 399, 265 N.W.2d 298 (1978). "The test is not whether the inference drawn is the only reasonable inference. The test is whether the inference drawn is a reasonable one." *Ward*, 2000 WI 3 at ¶ 30.

¶ 11. Appellate courts "accord great deference to the warrant-issuing judge's determination of probable cause, and that determination will stand unless the defendant establishes that the facts are clearly insufficient to support a finding of probable cause." *State v. Multaler*, 2002 WI 35, ¶ 7, 252 Wis. 2d 54, 643 N.W.2d 437. The defendant bears the burden of proving insufficient probable cause when challenging a search warrant. *Id.*

*2. Reliability of Confidential Informant Information*

¶ 12. Jones argues that the warrant affidavit does not contain a basis for concluding that the confidential informant provided reliable information regarding drug dealing. Jones contends that much of the information supplied by the informant is non-incriminating and readily available to anyone. Jones argues that nothing in the affidavit suggests that the allegations of drug dealing are based on anything other than rumor. We disagree.

330

██

¶ 13. There are no longer specific prerequisites to a finding of confidential informant reliability. Rather, the current test simply requires courts to "consider all of the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information." *State v. Lopez*, 207 Wis. 2d 413, 425, 559 N.W.2d 264 (Ct. App. 1996). Here, the totality of the circumstances supports the warrant-issuing judge's implicit finding that the confidential informant provided reliable information.

██

¶ 14. First, the affidavit establishes that the confidential informant provided reliable information in the past. The informant previously supplied information leading to the issuance of a search warrant and during that search the police recovered evidence of criminal activity which the informant said would be present. The confidential informant's favorable track record is one consideration supporting the reliability of the information he or she provided. *See State v. Reed*, 156 Wis. 2d 546, 555, 457 N.W.2d 494 (Ct. App. 1990) (a circumstance indicating informant reliability is that the informant has provided reliable information in the past).

¶ 15. Second, the police were able to corroborate some of the informant's assertions prior to seeking the warrant. "Independent police corroboration of the informant's information imparts a degree of reliability to unverified details." *Lopez*, 207 Wis. 2d at 426. The phone number supplied by the informant was registered to Jones, and the number served a property owned by Jones in Wisconsin. In addition, the type of white, refrigerated semitrailer described by the informant was observed on Jones's property.

¶ 16. Third, the specificity of the informant's assertion regarding the interior of the semitrailer provides an indication of reliability. Jones correctly points out that the warrant does not indicate how the informant gathered his or her information. In this situation, "it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." *Spinelli v. United States*, 393 U.S. 410, 416 (1969). This sort of "sufficient detail" is present here.

¶ 17. The informant did not merely say that Jones was a large-scale drug dealer who used a semitrailer to transport drugs; the informant specified that Jones had modified the semitrailer ceiling to form a hidden compartment and did so by removing insulation. This additional information is not of the type a confidential informant is likely to supply without a basis in fact. To the contrary, an untruthful informant is best served by providing only general information. This case serves as an example. It is reasonable to infer from the affidavit that the confidential informant here provides information to the police on an ongoing basis, presumably in return for some benefit. It follows that the informant has an incentive to maintain his status as a reliable informer. The search of Jones's property might or might not have revealed contraband. If the police search came up empty, it would not necessarily mean the informant was unreliable, only that the police happened to execute the warrant at a time when Jones was "clean." However, when the informant asserted that Jones had created a hidden compartment in the semitrailer, the informant put his veracity at risk. If the police discovered no

hidden compartment, they would have reason to question the informant's reliability. Thus, the informant had no incentive to provide the hidden compartment detail if it was not based on reliable information.

¶ 18. Accordingly, the facts alleged in the warrant affidavit are sufficient to support the conclusion that the confidential informant provided reliable information.

### 3. Staleness

¶ 19. Jones contends that even if the informant's allegations would have supported probable cause at some point in time, they were "stale" by the time police applied for the search warrant. The State counters that the nature of Jones's activity, combined with his investment of time in modifying the semitrailer, suggests an ongoing criminal enterprise and, therefore, demonstrates the ongoing value of the information provided by the informant. We agree with the State.

¶ 20. We addressed staleness in *State v. Moley*, 171 Wis. 2d 207, 490 N.W.2d 764 (Ct. App. 1992):

> "Stale probable cause, so called, is probable cause that would have justified a warrant at some earlier moment that has already passed by the time the warrant is sought.
>
> "There is not, however, any dispositive significance in the mere fact that some information offered to demonstrate probable cause may be called stale, in the sense that it concerns events that occurred well before the date of the application for the warrant. If such past fact contributes to an inference that probable cause exists at the time of the application, its age is no taint."

*Id.* at 213 (quoting *State v. Valenzuela*, 536 A.2d 1252, 1264 (N.H. 1987)).

¶ 21. Courts look to the circumstances of each case when determining whether the information is stale. *State v. Ehnert*, 160 Wis. 2d 464, 469, 466 N.W.2d 237 (Ct. App. 1991). Furthermore:

> When the activity is of a protracted and continuous nature, the passage of time diminishes in significance. Factors like the nature of the criminal activity under investigation and the nature of what is being sought have a bearing on where the line between stale and fresh information should be drawn in a particular case.

*Id.* at 469–70 (citations omitted).

¶ 22. Jones argues that the key information in the warrant affidavit—the informant's allegations—was over six months old. In essence, Jones infers from the absence of additional incriminating information in the warrant affidavit that the police were unable to unearth new information in the interim. Jones contends the absence of new information negates probable cause that he was currently engaged in criminal activity at the time police applied for the warrant.

¶ 23. We agree that the time lag in this case presents a close call. However, there is good reason to defer to the warrant-issuing judge. Drug trafficking is a crime that tends to occur over long periods of time. *See United States v. Nocella*, 849 F.2d 33, 40 (1st Cir. 1988) ("By its very nature, drug trafficking, if unchecked, is apt to persist over relatively long periods of time."). The allegation that Jones modified a semitrailer to form a hidden compartment for the transport of large quantities of narcotics suggests a long-term investment in criminal activity. Furthermore, newer information tied

Jones and the white semitrailer to Jones's property in Wisconsin. Police records, in the form of traffic citations, revealed that Jones traveled to Marquette County in the months following the informant's tip. A police officer's observation of tire tracks in snow supported the inference that Jones moved the semitrailer to his property within two weeks of the time police applied for the search warrant. Accordingly, viewed in context, the warrant-issuing judge was justified in relying on the informant's information.

### C. Whether the Affidavit Contains Purposefully False Information

¶ 24. Jones asserts the warrant affidavit contains purposefully false information because the affidavit omitted the disposition of Jones's 1971 arrest and falsely claimed that DEA agents verified the informant's tip against police files. The State responds that Jones raises this issue for the first time on appeal and, thus, the issue is waived. We agree. At no time before the trial court did Jones meaningfully suggest that suppression was required because the affidavit contained misleading information. We have located only passing references to misleading information, unsupported by legal authority, and no request for a ruling on this topic. The challenge is waived because it is raised for the first time on appeal. *See Schwittay v. Sheboygan Falls Mut. Ins. Co.*, 2001 WI App 140, ¶ 16 n.3, 246 Wis. 2d 385, 630 N.W.2d 772 ("A party must raise an issue with sufficient prominence such that the trial court understands that it is called upon to make a ruling.").

¶ 25. Moreover, even if we were to address the merits of Jones's argument, we would reject it. In

essence, Jones now contends he was entitled to a *"Franks"* hearing. The Court in *Franks v. Delaware*, 438 U.S. 154 (1978), explained:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

*Id.* at 155–56. The *Franks* rule was extended in *State v. Mann*, 123 Wis. 2d 375, 385–90, 367 N.W.2d 209 (1985), to include omissions from a warrant affidavit if the omissions are the equivalent of deliberate falsehoods or reckless disregard for the truth. "For an omitted fact to be the equivalent of 'a deliberate falsehood or a reckless disregard for the truth,' it must be an undisputed fact that is critical to an impartial judge's fair determination of probable cause." *Id.* at 388 (footnote omitted). We review a trial court's denial of a defendant's motion for a *Franks* hearing *de novo*. *State v. Manuel*, 213 Wis. 2d 308, 315, 570 N.W.2d 601 (Ct. App. 1997).

¶ 26. The arguments Jones makes on appeal would have been insufficient to warrant a *Franks* hearing. He first argues that the inclusion in the warrant affidavit of his arrest for marijuana possession in 1971 deliberately deceived the court because the affidavit omitted that the charge was dismissed. Jones argues that this omission misled the issuing judge into believing the arrest led to a conviction. We disagree. Judges are well aware of the distinction between an arrest and a conviction. Here, the warrant-issuing judge was more likely to note that *only* an arrest was asserted and draw the inference that the police would have included a conviction had one resulted. Moreover,

336

even assuming for argument sake that the omission was deceptive, information suggesting that Jones had previously been convicted of marijuana possession was not "necessary" to the finding of probable cause. *See Franks*, 438 U.S. at 155–56 (defendant must show that "allegedly false statement is necessary to the finding of probable cause").

¶ 27. Jones also contests the veracity of the following phrase from the warrant affidavit: "[Special Agents] Doescher and Archer verified the information that the [confidential source] provided to them by reviewing intelligence files maintained by the Drug Enforcement Administration and other law enforcement agencies." Jones contends that the warrant affidavit is false because the DEA had no records on Jones, so DEA agents could not have verified the information provided by the informant.

¶ 28. This argument is a non-starter. The affidavit does not assert that the agents verified any particular detail provided by the informant. The warrant-issuing judge could not logically base his decision on such a conclusory and vague statement. On its face, the statement adds nothing to probable cause and, therefore, it was unnecessary to "the finding of probable cause." *Franks*, 438 U.S. at 156.

*II. Whether the Drug Tax Stamp Law Violates the Fifth Amendment's Prohibition Against Compelled Self-Incrimination*

¶ 29. Jones claims the drug tax stamp law, Wis. Stat. §§ 139.87–139.96 (1997–98),[2] is unconstitutional-

---

[2] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

on its face because it compels self-incrimination without prohibiting the use of this compelled self-incrimination in a criminal proceeding. Jones acknowledges that the legislature attempted to cure the pertinent statutes via amendment in response to the supreme court's decision in *State v. Hall*, 207 Wis. 2d 54, 557 N.W.2d 778 (1997), but contends the legislature failed. Jones asserts the statutory scheme remains unconstitutional because it (1) permits the presence of tax stamps affixed to seized contraband to be used in criminal proceedings against a dealer,[3] and (2) contains contradictory statements undermining the legislature's attempt to fix the statutes.

¶ 30. Whether a statute is unconstitutional is a question of law we review *de novo*. *Id.* at 67. " '[T]he burden of establishing the unconstitutionality of a statute is on the person attacking it, who must overcome the strong presumption in favor of its validity.' " *State v. Hezzie R.*, 219 Wis. 2d 848, 862, 580 N.W.2d 660 (1998) (quoting *White House Milk Co. v. Reynolds*, 12 Wis. 2d 143, 151, 106 N.W.2d 441 (1960)). "[A] party challenging a statute bears the heavy burden of proving that the statute is unconstitutional beyond a reasonable doubt." *Hezzie R.*, 219 Wis. 2d at 862–63.

*A. Whether the Presence of Affixed Tax Stamps is Information "Independently Obtained" and Admissible in Criminal Proceedings Against a Dealer*

¶ 31. Jones contends that the amended drug tax stamp statutes violate the Fifth Amendment because

---

[3] In this decision, we use the term "dealer" as it is defined in WIS. STAT. § 139.87(2).

the presence of affixed tax stamps is information "independently obtained" and, therefore, available for use against a dealer who complies with the drug tax laws, contrary to the supreme court's directive in *Hall*. Jones bases this argument on his assertion that *Hall* states: "the presence of affixed tax stamps is information independently obtained." Jones apparently contends the *Hall* court held that when tax stamps are acquired from illegal drugs they are, by definition, "independently obtained" and admissible under the statute. Under this reading of *Hall*, the legislature's retention of the "independently obtained" exception necessarily maintains the constitutional flaw identified in *Hall*. However, Jones misreads *Hall* and the amended statutes.

¶ 32. To begin with, Jones misquotes *Hall*. The actual language reads: "the presence of affixed tax stamps is not 'information obtained by the Department.'" *Hall*, 207 Wis. 2d at 76. Moreover, we find nothing in the *Hall* decision suggesting that the court construed the phrase "independently obtained" to mean that tax stamps found on illegal drugs may be used in a criminal proceeding.

¶ 33. Even though Jones's argument is based on a misreading of *Hall*, the question remains whether the legislature sufficiently remedied the compelled self-incrimination flaw identified in *Hall*. That is, does the new language prohibit the use of tax stamps affixed to illegal drugs against a dealer in a criminal proceeding. *See id.* at 75–76 (expressing apprehension that the old drug tax stamp statute failed to prohibit prosecutors from using affixed stamps against dealers). We conclude the legislative amendment achieved that goal.

¶ 34. The amended statutory language provides: "No information obtained from a dealer as a result of the dealer's compliance with this subchapter may be used against the dealer in any criminal proceeding . . . ." WIS. STAT. § 139.91(3). On its face, this language provides that information obtained from a dealer showing the dealer's compliance with the drug tax stamp law, such as tax stamps found on the dealer's drugs, may not be used in a criminal proceeding. However, a potentially offending phrase follows and reads: "unless that information has been independently obtained . . . ." *Id.* We conclude this qualifying phrase is ambiguous.

¶ 35. The purpose of all statutory construction is to discern the intent of the legislature. *State v. Setagord*, 211 Wis. 2d 397, 406, 565 N.W.2d 506 (1997). When a statute is ambiguous, we look to extrinsic factors, including legislative history, to determine the intent of the legislature. *Landis v. Physicians Ins. Co. of Wis., Inc.*, 2001 WI 86, ¶ 15, 245 Wis. 2d 1, 628 N.W.2d 893. In addition, "there is a strong presumption favoring the constitutionality of a legislative enactment and that the court will construe the statute to preserve it if it is at all possible to do so." *State v. Popanz*, 112 Wis. 2d 166, 172, 332 N.W.2d 750 (1983) (footnote omitted).

¶ 36. It is undisputed that the legislature was responding to *Hall* when it amended the statute. The *Hall* court suggested that a comparable Minnesota statute provided the Wisconsin "legislature with a model of a confidentiality provision that prohibits both the direct and derivative use of information compelled by the stamp law." *Hall*, 207 Wis. 2d at 86. In 1997, the same year *Hall* was issued, the Wisconsin legislature amended the confidentiality statute and copied the

Minnesota confidentiality statute almost verbatim.[4] *See* 1997 Wis. Act 27, § 2979m; *see also* Donald Chewning, *The Wisconsin Drug Tax Stamp Law, The Fifth Amendment, and the Realities of Taxing Controlled Substances,* 83 MARQ. L. REV. 659, 673–75 (Spring 2000) (discussing the legislature's response to *Hall*). Therefore, it is apparent the legislature intended that the language it used would remedy the compelled self-incrimination problem identified in *Hall* and, therefore, apparent that the amended language should be construed consistent with that intent.[5]

### B. Whether the Amended Confidentiality Statute is Contradicted by WIS. STAT. § 139.90

¶ 37. In the alternative, Jones argues that even if the legislature successfully amended WIS. STAT.

---

[4] The Minnesota confidentiality provision stated:

> [N]or can any information contained in such a report or return or obtained from a dealer be used against the dealer in any criminal proceeding, unless independently obtained, except in connection with a proceeding involving taxes due under this chapter from the dealer making the return.

MINN. STAT. § 297D.13 (1997).

WISCONSIN STAT. § 139.91, as amended, reads:

> (3) No information obtained from a dealer as a result of the dealer's compliance with this subchapter may be used against the dealer in any criminal proceeding unless that information has been independently obtained, except in connection with a proceeding involving taxes due under s. 139.88 from the dealer.

[5] We need not, in this opinion, explore the full meaning of "independently obtained." We need only conclude that the phrase does not authorize what *Hall* found to violate the Fifth Amendment.

§ 139.91(3) to comply with *Hall* and the Fifth Amendment, its overall effort nonetheless failed because Wis. Stat. § 139.90 contradicts the otherwise sufficient legislative fix. Jones contends that even if the amended § 139.91(3) excludes information obtained as a result of compliance with the drug tax stamp law from use in a criminal proceeding, § 139.90 explicitly removes that immunity because it states: "Acquisition of stamps or other evidence that the tax under s. 139.88 has been paid does not create immunity for a dealer from criminal prosecution."

¶ 38. The State responds, and we agree, that Wis. Stat. § 139.90 simply advises dealers that compliance with the drug tax stamp law does not immunize them from criminal prosecution for drug offenses. Section 139.90 says nothing about what evidence may be used in a criminal prosecution and thus does nothing to undercut the prohibition in Wis. Stat. § 139.91.[6]

*III. Whether Application of the Drug Tax Stamp Laws to Jones Violates Double Jeopardy Protections*

¶ 39. Jones asserts a double jeopardy violation based on the fact that he was convicted of both posses-

---

[6] In one sentence in his brief, Jones states "there are no provisions prohibiting law enforcement from using testimony or civil judgments for tax collection purposes against a defendant in a criminal case, or as an investigatory tool in identifying drug dealers." Jones provides no further argument and fails to explain why the lack of such provisions allows criminal investigators or prosecutors to use evidence of a dealer's compliance with the drug stamp law in a criminal proceeding. This argument is insufficiently developed to merit a response. *See State v. Pettit*, 171 Wis. 2d 627, 646–47, 492 N.W.2d 633 (Ct. App. 1992) (stating that we may decline to review an issue inadequately briefed).

sion of marijuana with intent to deliver and a drug tax stamp violation based on the same conduct. More specifically, he argues that multiple convictions were impermissible because possession with intent to deliver is a lesser-included offense of the drug tax stamp law.

¶ 40. We agree with the State that this exact claim has already been rejected in *State v. Dowe*, 197 Wis. 2d 848, 852, 541 N.W.2d 218 (Ct. App. 1995), *rev'd on other grounds,* 207 Wis. 2d 129, 557 N.W.2d 812 (1997), and that we are bound by *Dowe. See Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997). Although *Dowe* was reversed on other grounds, its double jeopardy holding remains good law. *See State v. Byrge*, 225 Wis. 2d 702, 717–18 n.7, 594 N.W.2d 388 (Ct. App. 1999) ("[H]oldings not specifically reversed on appeal retain precedential value.").

¶ 41. Jones acknowledges that *Dowe* addressed this precise issue, but claims that *Dowe* ignored contrary binding precedent of the United States Supreme Court. Jones points to *Harris v. Oklahoma*, 433 U.S. 682 (1977), for the proposition that in *Dowe* we erroneously failed to consider conduct and looked only to the elements of the two crimes. However, in *State v. Kurzawa*, 180 Wis. 2d 502, 509 N.W.2d 712 (1994), the supreme court explained there is no conflict between *Harris* and the "elements only" analysis used in Wisconsin. *Kurzawa*, 180 Wis. 2d at 518–20, 525–26; *see also Dowe*, 197 Wis. 2d at 853–54. Accordingly, because the elements of the relevant statutes remain unchanged since *Dowe*, we adhere to *Dowe* and reject Jones's double jeopardy claim.

*IV. Sufficiency of the Evidence*

¶ 42. Jones asserts the trial evidence was insufficient to prove guilt beyond a reasonable doubt. In essence, Jones maintains the State failed to prove he possessed the marijuana found on his Neshkoro property.

¶ 43. The State bears the burden of proving all elements of a crime beyond a reasonable doubt. *State v. Sartin*, 200 Wis. 2d 47, 53, 546 N.W.2d 449 (1996). This court may not reverse a conviction "unless the evidence, viewed most favorably to the state and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." *State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990). If any possibility exists that the jury could have drawn the appropriate inferences from the trial evidence to find guilt, this court may not overturn the verdict. *Id*. at 507.

¶ 44. We conclude the evidence was sufficient to support the guilty verdicts. The evidence tied the Crystal Lake and the Neshkoro properties owned by Jones to the marijuana. The bricks of marijuana were found in a *locked* refrigeration unit on Jones's Neshkoro property. The bricks bore markings consistent with having been transported in the semitrailer found on Jones's Crystal Lake property. Parts of the semitrailer were found in an outbuilding and the residence on the Crystal Lake property. Police also found a small amount of marijuana and a rifle with an obliterated serial number in the Crystal Lake residence. Jones's Neshkoro neighbor saw Jones bringing items to Jones's

Neshkoro property about two weeks before police found the marijuana on the property. Jones's Neshkoro neighbor testified that she observed no new tracks in the snow on the property after Jones left. This evidence, and reasonable inferences from it, was sufficient to support a jury finding that Jones was the party who put the marijuana in the locked refrigeration unit on his property.

¶ 45. Jones points out that fingerprints detected on the marijuana did not match his fingerprints. He argues that this evidence suggests the marijuana belonged to someone else. However, the fingerprint evidence is not inconsistent with Jones's guilt. The jury heard testimony that Jones likely used gloves to handle the aluminum-wrapped bricks of marijuana because of the cold December weather, and that criminals often fail to leave fingerprints on items they possess. The fact that someone else apparently handled the marijuana does not compel the conclusion that the jury could not have found Jones guilty beyond a reasonable doubt.

## V. Admission of Hearsay

¶ 46. Jones next argues that the trial court erroneously admitted hearsay evidence tying him to the semitrailer. We conclude that any error in this respect does not warrant reversal.

¶ 47. The semitrailer found on Jones's property was not registered in Jones's name. During trial, the State attempted to show that Jones actually controlled the semitrailer and that he had registered it under a fictitious name. To this end, an officer testified that the semitrailer found on Jones's property was titled in the State of Illinois to an Albert Chaffin. The officer testi-

fied that drug traffickers commonly title the vehicles they use with fictitious names and addresses and that they typically select an address with which they are familiar. The officer testified that the address listed for Chaffin in Chicago, Illinois, was not a residence but was, instead, a mortgage banking business. The officer then testified, over a hearsay objection, that he had learned that Chaffin did not work at the mortgage company. The officer also testified, over a defense objection, that Jones had a "familiarity or involvement" with the Dakota nightclub, located at the same intersection as the mortgage company.

¶ 48. Jones claims the trial court erroneously relied on Wis. Stat. § 908.03(19), the exception for "Reputation Concerning Personal or Family History," to admit the challenged hearsay. The State does not attempt to defend the trial court's ruling and instead argues harmless error. We adopt the State's approach and, assuming without deciding that admission of the hearsay was error, we conclude the error was harmless.

¶ 49. The test for harmless error is "whether there is a reasonable possibility that the error contributed to the conviction. A reasonable possibility is a possibility sufficient to undermine our confidence in the conviction." *State v. Williams*, 2002 WI 58, ¶ 50, 253 Wis. 2d 99, 644 N.W.2d 919 (citations omitted). In making this determination, the reviewing court considers the entire record. *State v. Patricia A.M.*, 176 Wis. 2d 542, 556–57, 500 N.W.2d 289 (1993).

¶ 50. Jones argues that the hearsay testimony was the only evidence linking the semitrailer to Chicago, where Jones lived. Jones also argues that the properly admitted evidence was insufficient to show

that he was the person who used the semitrailer to move the marijuana or to otherwise connect him to the marijuana. We disagree.

¶ 51. First, other evidence did link the semitrailer to Chicago. Trial testimony revealed that the semitrailer was registered in the state of Illinois and titled to "8801 South Story Island in the City of Chicago." Second, for the reasons set forth in ¶ 44 of this decision, the unchallenged evidence firmly linked the marijuana and the semitrailer to Jones and provided ample evidence on which to convict Jones. We conclude that any error in admitting the challenged hearsay was harmless.

## VI. *Interest of Justice*

¶ 52. Jones requests a new trial in the interest of justice, pursuant to WIS. STAT. § 752.35 (1999–2000). However, the arguments Jones offers in support are largely a rehash of arguments we have rejected above. We agree with the State that their quality has not improved with relabeling. We decline to order a new trial in the interest of justice.

## VII. *Conclusion*

¶ 53. For all of these reasons, we affirm the judgment of the circuit court.

*By the Court.*—Judgment affirmed.