COURT OF APPEALS
DECISION
DATED AND FILED

December 5, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP2094-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF1787

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

THOMAS G. SCHYE,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Eau Claire County: JOHN F. MANYDEEDS, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Thomas G. Schye appeals from a judgment convicting him of one count of possession of child pornography. Schye argues

that the circuit court erred when it denied two of his motions to suppress evidence obtained as a result of the search of his home and electronic devices pursuant to a warrant, as well as his motion for reconsideration. According to Schye, the search warrant leading to the discovery of the child pornography on his electronic device was not supported by probable cause. He also contends that the search warrant affiant provided false information and omitted material facts. For the reasons discussed below, we affirm the judgment.

## BACKGROUND

¶2      In November 2018, a special agent with the Wisconsin Department of Justice, Division of Criminal Investigation (DCI) and the Wisconsin Internet Crimes Against Children (ICAC) Task Force submitted a search warrant affidavit that sought judicial approval to search Schye's home and electronic devices for child pornography. The application for the search warrant was based on three "cybertips" from the National Center for Missing and Exploited Children (NCMEC), which were originally sent to NCMEC from Pinterest and Microsoft, and which NCMEC then forwarded to the ICAC Task Force.[1] The cybertips implicated Schye. According to the agent who submitted the affidavit, the cybertips contained three images (two of which were the same image) that "appeared to contain child pornography or child erotica as defined by" WIS. STAT.

---

[1] "NCMEC is funded in order to 'operate a cyber tipline to provide online users and electronic service providers an effective means of reporting Internet-related child sexual exploitation in the areas of … possession, manufacture, and distribution of child pornography[.]'" *State v. Silverstein*, 2017 WI App 64, ¶5 n.4, 378 Wis. 2d 42, 902 N.W.2d 550 (alteration in original; citation omitted).

§ 948.12(1m) (2021-22).[2] The agent did not include the images with the affidavit. He did, however, include with the affidavit a description of each image.

¶3 A judge ("the warrant-issuing judge") signed a warrant authorizing the search of Schye's home and electronic devices for evidence of child pornography. Following the execution of the search warrant, law enforcement located a video on a computer hard drive depicting "two early pubescent males" engaging in sexual acts. Based on that video, Schye was charged with one count of possession of child pornography.

¶4 Schye later filed two motions to suppress evidence obtained on execution of the search warrant. In his first motion to suppress, Schye argued that the search warrant affidavit did not provide probable cause to issue the search warrant. Specifically, he argued that the warrant-issuing judge did not view the images identified in the affidavit and that this fact was determinative because the images described in the affidavit were not child pornography. The circuit court denied the motion to suppress.

¶5 In Schye's second motion to suppress, he argued that the agent "deliberately" and/or "recklessly omitted" information in his search warrant affidavit and, therefore, the results of the search conducted pursuant to the warrant should be suppressed under *Franks*/*Mann*.[3] He also asked the circuit court to

---

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[3] *See Franks v. Delaware*, 438 U.S. 154 (1978); *State v. Mann*, 123 Wis. 2d 375, 367 N.W.2d 209 (1985).

reconsider its earlier order denying his first motion to suppress. The court denied Schye's *Franks*/*Mann* motion and the motion for reconsideration.

¶6    Ultimately, Schye pled no contest to the single count charged. Schye now appeals his judgment of conviction, arguing that the circuit court erred when it denied his two motions to suppress and his motion for reconsideration.

## DISCUSSION

### I. Probable cause

¶7    Schye first contends that the circuit court should have granted his initial motion to suppress because the search warrant affidavit "was based on insufficient information to show that child pornography would be found at [his] home" or on his electronic devices. Schye also asserts that the search warrant was constitutionally deficient because the warrant-issuing judge did not view the actual images referenced in the search warrant affidavit.

¶8    The Fourth Amendment's Warrant Clause requires:

> (1) prior authorization by a neutral, detached magistrate;
> (2) a demonstration upon oath or affirmation that there is probable cause to believe that evidence sought will aid in a particular conviction for a particular offense; and (3) a particularized description of the place to be searched and items to be seized.

*State v. Sveum*, 2010 WI 92, ¶20, 328 Wis. 2d 369, 787 N.W.2d 317.

¶9    To determine whether a search warrant was supported by probable cause, we examine "the totality of the circumstances presented to the warrant-issuing [judge] to determine whether [he or she] had a substantial basis for concluding that there was a fair probability that a search of the specified premises

would uncover evidence of wrongdoing." *State v. Silverstein*, 2017 WI App 64, ¶13, 378 Wis. 2d 42, 902 N.W.2d 550 (citation omitted). Stated differently, the question is "whether objectively viewed, the record before the warrant-issuing judge provided 'sufficient facts to excite an honest belief in a reasonable mind that the objects sought are linked with the commission of a crime, and that they will be found in the place to be searched.'" *State v. Ward*, 2000 WI 3, ¶27, 231 Wis. 2d 723, 604 N.W.2d 517 (citation omitted).

¶10    "The evidence necessary to establish probable cause to issue a search warrant is less than that required to support a bindover following a preliminary examination." *Silverstein*, 378 Wis. 2d 42, ¶13 (citation omitted). "The warrant-issuing judge may draw reasonable inferences from the facts asserted in [a search warrant] affidavit. 'The test is not whether the inference drawn is the only reasonable inference. The test is whether the inference drawn is a reasonable one.'" *State v. Jones*, 2002 WI App 196, ¶10, 257 Wis. 2d 319, 651 N.W.2d 305 (citations omitted).

¶11    Our review of the warrant-issuing judge's decision is "confined to the record as it existed before the magistrate." *State v. Sloan*, 2007 WI App 146, ¶8, 303 Wis. 2d 438, 736 N.W.2d 189 (citation omitted). In analyzing whether probable cause existed to issue a search warrant, "[w]e accord great deference to the warrant-issuing judge's determination of probable cause, and that determination will stand unless the defendant establishes that the facts are clearly insufficient to support a finding of probable cause." *Silverstein*, 378 Wis. 2d 42, ¶13 (citation omitted).

¶12    Within the search warrant affidavit, the agent described his law enforcement experience, which included an assignment to the ICAC Task Force

and employment with the DCI since 2017. He also outlined his training and experience in those roles as they related to investigating Internet crimes against children and child pornography.

¶13    The agent further detailed that individuals "involved in the purchase, receipt, and attempted purchase and receipt of child pornography" "receive sexual gratification, stimulation, and satisfaction … from fantasies they may have viewing children engaged in sexual activity or sexually suggestive poses." Similarly, those individuals "may collect sexually explicit or suggestive materials relating to children in a variety of media" and that "individuals who possess child pornography may store it on numerous devices."

¶14    Further, the agent discussed his knowledge of how Internet service providers submit cybertips relating to the online sexual exploitation of children to NCMEC pursuant to federal law. According to the agent, when NCMEC receives a cybertip, "NCMEC details the alleged on-line sexual exploitation of children reported by the Internet service provider in a CyberTipLine report." The agent then described that, in Wisconsin, NCMEC submits the cybertip to the ICAC Task Force.

¶15    The agent further explained in the search warrant affidavit that he had examined the cybertips that the ICAC Task Force received from NCMEC and discovered that all three were "still images" that "appeared to contain child pornography or child erotica as defined by WIS. STAT. § 948.12(1m)." Two of the

images were the same but had different Uniform Resource Locators (URLs).[4]
Although the agent did not include the three images with the affidavit, he
described them as follows:

> [Image 1]
> [I] examined the above file and observed that the image was a color JPEG Image depicting a partially nude prepubescent boy, who is posed in an indoor scene.[5] The child is standing and is bent over, with both hands holding a pair of athletic shorts; the child appears to be in the process of putting the athletic shorts on. The child is wearing red knee high socks with a white stripe near the top. The child's unclothed penis is visible in the photograph.
>
> [Image 2]
> [I] examined the above file and observed that the image was a single color image depicting a pubescent child with below shoulder length brunette hair. The child has no clothing on and their buttock is completely exposed to the camera. The child has both hands behind their head. The photograph appears to be staged and the focal point of the photograph is the child.
>
> [Image 3]
> [The same description as Image 2]. This image is the same image that is described above, however the URL provided by [P]interest is different.

---

[4] A URL is "the address of a resource (such as a document or website) on the Internet that consists of a communications protocol followed by the name or address of a computer on the network and that often includes additional locating information (such as directory and file names)." *URL*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/URL (last visited Nov. 28, 2023).

[5] The agent stated in the search warrant affidavit that he used the terms "pubescent" and "prepubescent" based on his "experience as an investigator and [his] common experience." "Pubescent" was used to mean "a child … [who] evidences some physical and sexual maturation consistent generally with a young teenager or teenager." "Prepubescent" was used to mean "a child … [who] does not exhibit any, or only very limited, physical-sexual development … such that the child appears to be well under the age of eighteen."

The affidavit also provided information identifying Schye as the individual associated with the Pinterest account and IP address[6] that uploaded the images. According to the affidavit, the agent surveilled Schye's home and identified "two other males associated with the residence … who appear[ed] to be [Schye's] adult children," the youngest born in 1988.

¶16 Furthermore, the agent's search warrant affidavit included a reference to a 2007 incident where Schye was found by a DCI agent in a parked car in front of a McDonald's "children's play area." At that time, Schye allegedly told the agent that "he was sexually attracted to children between the ages of 5 and 12 years old." Due to his actions in 2007, Schye was convicted of invasion of privacy.

¶17 Schye contends that the agent's description of the images in the search warrant affidavit was insufficient to establish probable cause. According to Schye, the only "way the images depicted 'sexually explicit conduct' is if the minors depicted were engaged in the 'lewd exhibition of intimate parts'" as that term is used in WIS. STAT. § 948.01(7). Schye argues that the agent did not "provide any facts suggesting that the minors [in the images] were engaged in the 'lewd exhibition of intimate parts'" and, therefore, the images as described did not constitute child pornography.

¶18 Schye fails to meet his burden to establish that the agent's search warrant affidavit was "clearly insufficient to support a finding of probable cause."

---

[6] An IP address is "the numeric address of a computer on the Internet." *IP address*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/IP%20address (last visited Nov. 28, 2023). The address is "unique" in that it identifies a specific device on the Internet. *State v. Baric*, 2018 WI App 63, ¶4 n.3, 384 Wis. 2d 359, 919 N.W.2d 221.

*See Silverstein*, 378 Wis. 2d 42, ¶13 (citation omitted). The question before us is not whether the images depicted child pornography, but whether there was a reasonable basis for the warrant-issuing judge to find that there was a fair probability that a search of Schye's home and electronics would uncover evidence of possession of child pornography based on the descriptions of the images *and* the other information submitted by the agent.[7] Under these facts, the warrant-issuing judge had the requisite information to issue a search warrant.

¶19 We first note that based upon the images described in the search warrant affidavit, the circuit court could reasonably infer that the images constituted child pornography. *See Jones*, 257 Wis. 2d 319, ¶10. Child pornography includes "any … photograph … of a child engaged in sexually explicit conduct." WIS. STAT. § 948.12(1m). "Sexually explicit conduct" includes the "[l]ewd exhibition of intimate parts." WIS. STAT. § 948.01(7)(e). "Intimate

---

[7] According to Schye, if the images described in the search warrant affidavit were not child pornography, then we should not consider them in the probable cause analysis lest we dissolve into a "dystopian world, such as [that] portrayed in the 2002 feature film '*Minority Report*,' where 'pre-crime' is punished." But the search warrant in this case was not about preventing a future crime. The warrant-issuing judge determined that there was a fair probability that there was child pornography in Schye's possession *at the time* the warrant was signed. Probable cause deals "with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men [and women], not legal technicians, act." *Illinois v. Gates*, 462 U.S. 213, 231 (1983). To that end, not every fact relied on in issuing a search warrant need be unlawful activity. *See State v. Robinson*, 2010 WI 80, ¶29, 327 Wis. 2d 302, 786 N.W.2d 463.

> [P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to *sub silentio* impose a drastically more rigorous definition of probable cause than the security of our citizens' demands.…

*Id.* (alteration in original; quoting *Gates*, 462 U.S. at 243 n.13).

parts," in turn, include the "buttock, anus, groin, scrotum, [or] penis … of a human being." WIS. STAT. § 939.22(19). There is no question that the images depicted the intimate parts of human beings and that the agent described the images as depicting children.

¶20 "Lewd" has been interpreted in the child pornography context to include images that "visibly display the child's genitals or pubic area. Mere nudity is not enough." *State v. Petrone*, 161 Wis. 2d 530, 561, 468 N.W.2d 676 (1991), *overruled on other grounds by State v. Greve*, 2004 WI 69, ¶31 n.7, 272 Wis. 2d 444, 681 N.W.2d 479. Further, the child must be "posed as a sex object" and the image is lewd if it has an "unnatural" or "unusual" focus on a child's genitalia. *Id.* Importantly, our supreme court has noted that these principles are merely "guidelines to determine the lewdness of a photograph but [juries] may use common sense to distinguish between a pornographic and innocent photograph." *Id.*

¶21 Here, the warrant-issuing judge could reasonably have inferred that the children in the images were being posed as sex objects while nude. Image 1 described a child "posed" with his penis visible. Images 2 and 3 were similarly described as depicting a "staged" child with his or her buttocks "completely exposed." Although no "genitals" were depicted in Images 2 and 3, the warrant-issuing judge was free to use common sense to distinguish an innocent depiction of a child and a depiction where the child is a sex object with an "unnatural" focus on the child's buttocks—which qualify as the child's "intimate parts" under WIS. STAT. § 939.22(19). *See Petrone*, 161 Wis. 2d at 561. In other words, simply because Schye does not agree that the images described do not amount to child pornography does not mean the warrant-issuing judge was

required to draw that same conclusion so long as the inferences that the judge made were reasonable. *See Jones*, 257 Wis. 2d 319, ¶10.

¶22 According to Schye, the agent's descriptions of the images in his search warrant affidavit are "extremely similar" to the descriptions in a search warrant affidavit discussed in *United States v. Griesbach*, 540 F.3d 654 (7th Cir. 2008). In *Griesbach*, a defendant filed a motion to suppress the results of a search because the search warrant was not supported by probable cause. *Id.* at 655. As in this case, the affidavit in *Griesbach* stated that law enforcement suspected that the defendant possessed child pornography in violation of WIS. STAT. § 948.12(1m), but the affidavit did not include the images that led to the investigation. *See Griesbach*, 540 F.3d at 655. The affidavit that the warrant-issuing judge relied on "described three images that the police investigator had found on the Internet and traced to the defendant." *Id.*

> The first "depicts a prepubescent female posing by a body of water. She has her top pulled up to expose her breasts." The second "depicts a female who appears to be under the age of 18 posing naked. She is standing to expose her full body." The third "depicts a naked female exposing her vagina. The female is lying on her back and her vagina is the primary focus of the image. The female appears to be under the age of 18. The image is from identified child pornography series 'Chelsea' where law enforcement has identified the child victim."

*Id.* The State relied solely on the third image to argue that the warrant was supported by probable cause. *Id.*

¶23 Although the court stated that "[t]he failure of the state investigator to submit the image itself with her affidavit to the state judge is the strangest thing about this case," the court ultimately concluded that "the verbal description was sufficient to justify an inference that a search of the defendant's computer files

would turn up pornographic images." *Id.* at 656. In so holding, the court relied on the affiant's: description of the image as being primarily focused on the child's vagina, assertion that the image's known history was associated with a child pornography series, and statement that the image was reported by a website. *See id.*

¶24 Schye argues that the first two images described in *Griesbach* are similar to the images described in the search warrant affidavit in this case. To the extent we find *Griesbach* persuasive, *see State v. Mechtel*, 176 Wis. 2d 87, 94, 499 N.W.2d 662 (1993) (decisions of federal circuit courts of appeal or federal district courts are not binding upon Wisconsin courts), we note that the court in *Griesbach* did not review whether the first two images provided probable cause for the issuance of the search warrant because the State did not make that argument. *See id.* at 655-56. Even so, the images in this case are more like the third image in *Griesbach*, which was described in the search warrant affidavit as depicting, as the "primary focus of the image," a child "exposing her vagina." *Id.* Similarly, the agent in this case described the "focal point" of Images 2 and 3 to be the "staged" child, who was naked and had his or her buttocks "completely exposed to the camera." Similarly, Image 1 was described as depicting a "posed" child with his penis exposed to the camera. In both *Griesbach* and this case, the warrant-issuing judge could reasonably determine that the images depicted child pornography.

¶25 Schye argues that the agent's statement in the search warrant affidavit that the images contained child pornography *or child erotica* as defined by WIS. STAT. § 948.12(1m) means that the images could have been constitutionally protected under the First Amendment because child erotica is not child pornography. According to Schye, the agent was required to describe the

12

photographs so that they would meet the definition of child pornography. For example, he argues that the agent failed to state that there was an "unnatural" or "unusual" focus on the child's genitalia. *See* **Petrone**, 161 Wis. 2d at 561. Otherwise, Schye argues, images sufficient to establish probable cause for the issuance of a search warrant would include "a parent's bathtub photograph of their child."

¶26 A search warrant "affidavit is to be read in a commonsense, not a hypertechnical, fashion." **Sloan**, 303 Wis. 2d 438, ¶23 (citation omitted). As the State asserts, the "affidavit did not need to specifically declare that the images were definitively child pornography or child erotica for a court to conclude that a reasonable inference existed that the images were child pornography." A simple bathtub photograph taken by a parent, without more information, would not satisfy the probable cause standard. However, here, the images were not merely bathtub photographs taken by a parent. As described, the images depicted minors posed or staged to visibly display their intimate parts to the viewer.

¶27 Even if one or more of the images were not child pornography, the warrant-issuing judge could reasonably infer from the search warrant affidavit that Schye possessed actual child pornography at his home or on his electronic devices given: (1) the agent's training and experience with Internet crimes against children and child pornography investigations as part of the DCI and the ICAC Task Force; (2) the fact that the images were sent to the ICAC Task Force by NCMEC, which had received the images from Pinterest and Microsoft; (3) the agent's knowledge that individuals who obtain sexual gratification from child pornography, "may collect sexually explicit or suggestive materials relating to children," including child pornography; (4) the agent's descriptions of the images, which included descriptions of a "posed" child in the nude and a "staged" image

of a nude child (the images also depicted the intimate parts of children, *see* WIS. STAT. § 939.22(19)); (5) the fact that Schye had two adult children who, therefore, were unlikely to be the children depicted in the images; (6) the fact that the IP address identified as the source of the images to Pinterest and Microsoft was associated with Schye; and (7) Schye's previous admission to being sexually attracted to children.

¶28 Schye asserts that the images do not support the warrant-issuing judge's probable cause determination simply because they were forwarded to the ICAC Task Force from NCMEC. According to Schye, "NCMEC does not view reported images or conduct any investigation into whether the images are actually child pornography."

¶29 "Review of the sufficiency of an affidavit necessarily focuses on personal and observational reliability of the informant." *Silverstein*, 378 Wis. 2d 42, ¶14. We have previously stated that cybertips reported to NCMEC from Internet service providers are inherently reliable because such companies (like Pinterest and Microsoft) are required "under federal mandate to report suspected child abuse to NCMEC." *See id.*, ¶19; 18 U.S.C. § 2258A. Here, the images were not anonymously sent to the ICAC Task Force. The images were flagged and reported as cybertips by Pinterest and Microsoft. Therefore, while NCMEC may not have actually reviewed the images, Pinterest and Microsoft reviewed the images and determined that they were required to submit the images pursuant to § 2258A. These facts described in the search warrant affidavit added to the probable cause analysis in favor of the State.

¶30 Schye also argues that his 2007 statement about being sexually attracted to children "does not strengthen the probable cause analysis." However,

14

"[i]f old information in a warrant affidavit contributes to an inference that probable cause exists at the time of the application for the warrant, the age of the information" does not preclude a conclusion that the affidavit establishes probable cause. *State v. Multaler*, 2002 WI 35, ¶36, 252 Wis. 2d 54, 643 N.W.2d 437. Importantly, a sexual attraction to children "is of a protracted and continuous nature" and, therefore, in the context of determining whether probable cause existed to issue a search warrant, "the passage of time diminishes in significance." *See State v. Schaefer*, 2003 WI App 164, ¶19, 266 Wis. 2d 719, 668 N.W.2d 760 (citation omitted). As such, Schye's 2007 admission to being attracted to children added to the probable cause analysis in favor of the State.

¶31 Lastly, Schye asserts that the search warrant was not supported by probable cause because the warrant-issuing judge did not view the actual images described in the search warrant affidavit. Schye's only citation to supporting authority on this point is *Griesbach*, which, again, did not hold that a warrant-issuing judge is required to view images in order to find that probable cause exists for the issuance of a warrant. Nor is *Griesbach* binding on this court. *See Mechtel*, 176 Wis. 2d at 94. Therefore, we reject Schye's assertions and conclude that the warrant-issuing judge was not required to view the actual images described in the search warrant affidavit and that the affidavit's descriptions of the images added to the warrant-issuing judge's probable cause analysis.

**II. *Franks/Mann***

¶32 Schye next contends that the circuit court should have granted his second motion to suppress because the agent "provided false information by claiming that 'suspected' child pornography images were in fact child pornography." According to Schye, the agent's statement was false because "the

described images actually depict mere nudity, not sexually explicit conduct by an underage person." Schye also asserts that the agent's description of Images 2 and 3 as being "staged" recklessly distorted the truth because the images are "clearly designed to be artistic." He also argues that the agent "omitted material facts" when he described the images in the search warrant affidavit. Specifically, Schye contends that the agent failed to state that there was an "unnatural focus" on the children's intimate parts in any of the three images.

¶33 We first clarify the standard of review we apply to a circuit court's denial of a defendant's *Franks*/*Mann* motion because the parties disagree about which standard we should use in this case.

> When challenging the veracity of statements in support of a search warrant, the defendant must first make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit and that the allegedly false statement is necessary to the finding of probable cause.
>
>  ….
>
> If the court concludes that the defendant has made the substantial preliminary showing, then the defendant is entitled to a hearing at which the defendant must then prove, by a preponderance of the evidence, that the challenged statement is false, that it was made intentionally or with reckless disregard for the truth, and that absent the challenged statement the affidavit does not provide probable cause.

*State v. Anderson*, 138 Wis. 2d 451, 462, 406 N.W.2d 398 (1987); *see also Franks*, 438 U.S. at 155-56.

¶34 "The *Franks* rule was extended in [*Mann*], to include omissions from a warrant affidavit if the omissions are the equivalent of deliberate falsehoods or reckless disregard for the truth." *Jones*, 257 Wis. 2d 319, ¶25

(citing *Mann*, 123 Wis. 2d at 385-90). "For an omitted fact to be the equivalent of 'a deliberate falsehood or a reckless disregard for the truth,' it must be an undisputed fact that is critical to an impartial judge's fair determination of probable cause." *Mann*, 123 Wis. 2d at 388 (citation omitted).

¶35   If a circuit court denies a *Franks*/*Mann* motion without an evidentiary hearing, we review that decision de novo. *State v. Manuel*, 213 Wis. 2d 308, 315, 570 N.W.2d 601 (Ct. App. 1997). Conversely, if a court denies a *Franks*/*Mann* motion following a hearing, we apply a mixed standard of review. *See State v. Hogan*, 2015 WI 76, ¶32, 364 Wis. 2d 167, 868 N.W.2d 124.

¶36   Here, it is unclear under which prong of the *Franks*/*Mann* test the circuit court denied Schye's motion. Although a hearing was held, the agent did not testify. Instead, in making their arguments to the court, the parties relied upon the agent's statements made during an out-of-court meeting between the agent, the State, and Schye's defense attorney. Additionally, as Schye argues, the court did not make any factual findings at the hearing. As such, we will assume without deciding that we should apply a de novo standard of review as if the court did not hold an evidentiary hearing on the motion.[8] In doing so, we conclude that Schye failed to make a substantial preliminary showing that the agent's statements were false or that he omitted information that was necessary to the finding of probable cause. We do so because all three images could reasonably be interpreted as depicting child pornography, as we described above. *See supra* ¶¶19-26.

---

[8] Because we review the circuit court's denial of Schye's *Franks*/*Mann* motion de novo, we need not address his argument that the court incorrectly applied deference to the warrant-issuing judge in denying the motion.

¶37     Even if one or more of the images did not depict child pornography, "the allegedly false statement[s were not] necessary to the finding of probable cause." *See Franks*, 438 U.S. at 156.  That is, even if the images were not child pornography by definition, the affidavit still provided probable cause for the warrant-issuing judge to sign the search warrant, as discussed above.  *See supra* ¶¶27-31.

¶38     Finally, Schye argues that the agent failed to state in his search warrant affidavit that "none of the images evidently matched the NCMEC database of 'known' child pornography."  Schye cites no authority to demonstrate that an affiant is required to state that the suspected child pornography does or does not match the NCMEC database.  His argument is undeveloped and unsupported by legal authority.  *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

¶39     And, at best, the addition of this statement, when considered with the other information contained in the warrant affidavit, would not have affected the warrant-issuing judge's determination of probable cause.  There was nothing in the affidavit stating NCMEC had reviewed the images or determined that they constituted child pornography.  Thus, the failure to advise the warrant-issuing judge that the images did not match those in NCMEC's database of "known" pornography was unimportant to the warrant-issuing judge.

        *By the Court.*—Judgment affirmed.

        This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.