# COURT OF APPEALS
## DECISION
## DATED AND FILED

## January 9, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1956-CR**

Cir. Ct. No. 2019CF4749

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

DEONDRE T. TOWNSEND,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Milwaukee County: DAVID L. BOROWSKI, Judge. *Affirmed.*

Before White, C.J., Donald, P.J., and Geenen, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Deondre T. Townsend appeals from a judgment of conviction entered following a jury trial for first-degree intentional homicide and armed robbery, both counts as a party to a crime.  On appeal, Townsend argues that the trial court erroneously denied his motion to suppress and erroneously denied his *Franks-Mann* motion that challenged the affidavit attached to the search warrant for his home.[1]  Upon review, we conclude that Townsend forfeited his argument made on appeal challenging the trial court's decision on his motion to suppress, and we conclude that the trial court appropriately denied Townsend's *Franks-Mann* motion.  Accordingly, we affirm.

## BACKGROUND

¶2    On October 25, 2019, Townsend was charged with one count of first-degree intentional homicide and one count of armed robbery, as a party to a crime, for the shooting death and armed robbery of Beverly Williams that occurred just days earlier on October 16, 2019.[2]

¶3    According to the statement that Townsend provided to police, Townsend had fallen on hard times and decided to rob Williams because he knew her from the neighborhood and thought that "she would be an easy target."  Townsend entered her home "by knocking on the door and asking to use the bathroom."  Once he was in her house, "[h]e pulled a gun when he got to the

---

[1] *See* **Franks v. Delaware**, 438 U.S. 154 (1978); **State v. Mann**, 123 Wis. 2d 375, 367 N.W.2d 209 (1985).

[2] Townsend was initially charged with first-degree intentional homicide and armed robbery, with party to a crime applicable only to the armed robbery charge.  The charges were later amended to add the party to a crime liability to the charge of first-degree intentional homicide.

2

kitchen and ordered her to go into the basement." Williams "expressed disbelief" and pulled the gun towards her, and the gun went off. "[S]he fell onto the floor, clutching at and looking at her stomach." She was on the floor moaning, and Townsend "decided to show her mercy, so he pointed the gun at her head" and pulled the trigger. Townsend and his brother then took several items from the home, including jewelry, pills, two TVs, and other items. They also took Williams' vehicle, and Townsend put license plates registered to himself on the vehicle.

¶4 When Williams failed to show up for work the next day, Williams' daughter went to check on her. She found her mother's body lying in the kitchen in a pool of blood and called the police. Williams' daughter provided the police with a list of items she believed to be missing from her mother's home, including two TVs, jewelry, a laptop, and her mother's vehicle.

¶5 Police found Williams' vehicle on the night of October 21, 2019, parked in the alley outside a residence at 2750 North 53rd Street in Milwaukee. There was a large TV inside the vehicle. The license plates on the vehicle were registered to Townsend. The police spoke to Antonio and Constance Santiago, who lived at 2750 North 53rd Street, about the vehicle outside their residence and inquired whether they knew Townsend and whether Townsend was inside the residence. Antonio and Constance eventually admitted that Townsend was Constance's brother, but they denied the police consent to search the home. The police remained on the scene, obtained a search warrant, and ultimately recovered a gun and several items belonging to Williams from Townsend's bedroom inside the residence.

¶6      During their investigation, the police further discovered a receipt from a pawn shop in Wauwatosa indicating that Townsend exchanged two rings and a TV for cash and obtained video footage from the pawn shop that appeared to show an exchange consistent with the receipt.  An analysis of the pistol found in Townsend's bedroom revealed that it was a match for the bullet recovered from Williams' spine.

¶7      Prior to trial, Townsend moved to suppress the evidence found during the search of his home based on an illegal entry into the home, and he also made a *Franks*-*Mann* motion challenging several statements in the affidavit attached to the search warrant for his home.  At the hearing on the motions, the State presented the testimony of the officer who prepared the affidavit that was attached to the search warrant.  Townsend, proceeding *pro se*, presented testimony from additional officers who were at the scene of his arrest and subsequent search of his home, along with testimony from Antonio and Constance.[3]

¶8      The trial court denied his motions.  In regard to the statements in the affidavit attached to the search warrant, the trial court found, "[t]he testimony is the State conceded … that in the warrant application in the affidavit there … [were] relatively small discrepancies.  Based on the testimony, the discrepancies were not intentional.  They were not significant.  They were not substantive."  Thus, the trial court found "the warrant had probable cause, and there's not a *Franks-Mann* violation."  The trial court also addressed the motion to suppress

_____

[3] Townsend was initially represented by counsel.  However, after having his third attorney appointed, the trial court granted Townsend's request to proceed *pro se* with the assistance of standby counsel.  Accordingly, Townsend proceeded *pro se* with standby counsel for the remainder of the proceedings.

based on an illegal entry and found that "[c]learly, the officers eventually entered the house with consent." In making this finding, the trial court observed, "[t]he defense witness herself indicated that, yes, she basically admitted that they entered with consent and certainly said that the officers did not toss the house, they didn't start looking under mattresses or looking in rooms or opening closets or cabinets until after they had the warrant."

¶9      Following a jury trial, Townsend was convicted of both counts. He was subsequently sentenced to life imprisonment with the possibility of extended supervision after forty years for the count of first-degree intentional homicide and a concurrent sentence of thirty years of imprisonment, bifurcated as twenty years of initial confinement and ten years of extended supervision, for the count of armed robbery. Townsend now appeals. Additional relevant facts will be set forth as necessary.

## DISCUSSION

¶10      On appeal, Townsend argues that the trial court erroneously denied his motion to suppress and erroneously denied his *Franks-Mann* motion. We address each argument in turn.

### I.      Motion to Suppress

¶11      Townsend argues that the trial court erroneously denied his motion to suppress. Specifically, Townsend challenges his arrest and argues that he was arrested without a warrant for an offense that does not exist and that he was arrested without probable cause. As a result, Townsend argues that the statement that he made to the police after his arrest, in which he confessed to shooting

Williams and taking several of her belongings from her home, should have been suppressed.

¶12    In response, the State argues that Townsend forfeited this argument by failing to raise it before the trial court and for raising it for the first time on appeal. "The general rule is that issues not presented to the circuit court will not be considered for the first time on appeal." *State v. Caban*, 210 Wis. 2d 597, 604, 563 N.W.2d 501 (1997). We agree with the State that Townsend forfeited his argument that he now makes on appeal.

¶13    During the proceedings before the trial court, Townsend filed a motion entitled "Defendant's Motion to Suppress Evidence—Illegal Entry Into Home."[4] In his motion, he sought to suppress "all items" seized from his home based on a lack of consent to enter the home. The trial court then denied Townsend's motion on the basis that "[c]learly, the officers eventually entered the house with consent." Similarly, in his brief on appeal, Townsend characterizes his trial court motion as "a motion to suppress evidence due to the illegal police entry."

---

[4] In addition to the motion to suppress noted here and filed through counsel, Townsend filed several *pro se* motions during the proceedings before the trial court. We do not address Townsend's *pro se* motions. As to those motions that Townsend filed while simultaneously being represented, Townsend does not have a right to representation by counsel while also representing himself. *See State v. Wanta*, 224 Wis. 2d 679, 699, 592 N.W.2d 645 (Ct. App. 1999) (rejecting a defendant's "own motion before the circuit court while he was represented by counsel" because there is "no constitutional right to concurrent self-representation and representation by counsel"). As to those motions filed after waiving his right to counsel, Townsend states that those motions were "substantially identical" to the motion to suppress filed by counsel. Consequently, we limit our discussion to "Defendant's Motion to Suppress Evidence—Illegal Entry Into Home" filed by Townsend's counsel.

¶14　By contrast, on appeal, Townsend asks this court to review the trial court's denial of his motion to suppress based on his warrantless arrest, and argues that he was arrested for a criminal offense that does not exist and the police lacked probable cause to arrest him.　Given the difference in the arguments made before the trial court and on appeal, we consider Townsend's argument on appeal to be a new argument raised for the first time on appeal, and therefore, we do not address it further.　*See **id.***[5]

## II.　*Franks-Mann* **Motion**

¶15　Townsend additionally argues that the trial court erroneously denied his *Franks-Mann* motion.　In particular, he challenges the statements made in the affidavit attached to the warrant issued for the search of his home, and he argues that three statements in particular found in paragraph three of the affidavit were falsely made:　(1) that Antonio told the police that the license plates on the vehicle were registered to Townsend; (2) that Townsend lived in the home; and (3) that Townsend was refusing to come out of the house.　Townsend argues that these statements "were cleverly crafted to falsely attribute a guilty state of mind to Townsend."　We disagree.

¶16　In *Franks*, the Supreme Court of the United States addressed false statements made in affidavits related to search warrants and concluded:

> [W]here the defendant makes a substantial preliminary
> showing that a false statement knowingly and intentionally,
> or with reckless disregard for the truth, was included by the

---

[5] Relatedly, we consider Townsend to have abandoned his argument that he made before the trial court that was based on consent because he has not pursued that argument on appeal.　*See* ***A.O. Smith Corp. v. Allstate Ins. Cos.***, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998) ("[A]n issue raised in the trial court, but not raised on appeal, is deemed abandoned.").

affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

*Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). The Court continued,

In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Id.* at 156.

¶17     In further defining the defendant's burden, our supreme court stated, "to prove reckless disregard for the truth, the defendant must prove that the affiant in fact entertained serious doubts as to the truth of the allegations or had obvious reasons to doubt the veracity of the allegations." *State v. Anderson*, 138 Wis. 2d 451, 463, 406 N.W.2d 398 (1987). Statements that were made "innocently or negligently are insufficient to have the challenged statement removed from the affidavit." *Id.*; *see also Franks*, 438 U.S. at 171 ("Allegations of negligence or innocent mistake are insufficient.").

¶18     We uphold the trial court's findings of fact unless clearly erroneous, and we review independently a trial court's denial of a *Franks-Mann* motion to suppress. *See State v. Jones*, 2002 WI App 196, ¶25, 257 Wis. 2d 319, 651 N.W.2d 305; *see also State v. Eason*, 2001 WI 98, ¶9, 245 Wis. 2d 206, 629 N.W.2d 625.

¶19     At the hearing on Townsend's motion, several witnesses testified to the statements made in the affidavit attached to the search warrant. Detective

William Schroeder testified that he prepared the affidavit attached to the search warrant based on information that he received over the phone from officers who were present at the scene. He further testified that he believed the information to be true when he prepared the search warrant and supporting affidavit. Detective Tyler Kirkvold then testified to his role in preparing the affidavit—namely, that he was at the scene that night and spoke with Detective Schroeder over the phone to relay information from the officers at the scene to Detective Schroeder for preparation of the affidavit.

¶20 Detective Guy Fraley also testified that he provided information from the scene to Detective Kirkvold for the affidavit. Specifically, Detective Fraley testified that he originally spotted Williams' vehicle and approached Antonio to ask him about the vehicle after he had seen Antonio standing near the vehicle. He testified that the police learned that Townsend was in the residence and that Antonio and Constance denied the police consent to enter the residence. As to the statement in the affidavit that Townsend was refusing to exit the residence, Detective Fraley testified that it was "the inference on my part, seeing as how it's a residential block and most of the block knew that we were out there because there were five to [ten] marked squad cars, and [ten] to [twenty] officers and six detectives walking around [Townsend's] house with flashlights and squad lights[.]" He further explained, "[P]retty much everybody knew that we were out there, so I was thinking that Mr. Townsend knew that we were out there." Detective Fraley also testified that he determined that the plates on the vehicle were registered to Townsend because he "ran the plate" and not because Antonio "informed me of that."

¶21 Antonio and Constance also testified regarding the events of that night prior to the search. Antonio testified that when he was asked about the

license plates on the vehicle, he stated, "I have no knowledge of that situation because due to the fact of just because he stays with me and lives with me doesn't mean that our business intertwine." Constance testified that she told the police that Townsend was her brother but she was not sure if Townsend was in the house. However, she later testified that she went into the house to Townsend's room and "knock[ed] on the door to see if he was in there" and confirmed he was in the home.

¶22 After hearing the testimony, the trial court denied Townsend's motion. In so doing, it found:

> The testimony is the State conceded from Detective Fraley, and maybe from one or two of the other officers, did indicate that in the warrant application in the affidavit there was some what I would characterize as relatively small discrepancies. Based on the testimony, the discrepancies were not intentional. They were not significant. They were not substantive.

The trial court noted that "the warrant was being applied for with some sense of urgency" based on the circumstances of that night but that the warrant nonetheless "had probable cause." We agree with the trial court's assessment.

¶23 Based on the record before us, we cannot conclude that Townsend has met his burden to show by a preponderance of the evidence that the allegations in the warrant were deliberately false or made with reckless disregard for the truth. *See Franks*, 438 U.S. at 156. As the State emphasizes, the affidavit was prepared "during a rapidly evolving homicide investigation where decisions needed to be made quickly." The officers relayed information over the phone from an active scene of investigation to an officer off-site, who then prepared the affidavit and search warrant that was issued. The police acted all within the span of a few hours starting late at night on October 21, 2019, to the early morning hours of October

22, 2019. An affidavit "is to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true" and "does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded … upon information within the affiant's own knowledge that sometimes must be garnered hastily." *Id.*, at 165.

¶24 Moreover, the testimony shows that the police did in fact know that the license plates were registered to Townsend, even if the affidavit misstated that Antonio was the source of that information. Similarly, the testimony from Antonio and Constance also established that the police knew at some point that Townsend was staying at the residence at issue in some capacity, even if the affidavit misstated specifically how and in what order the police obtained that information. The testimony also established that Townsend's refusal to exit the residence was an inference made by one of the officers at the scene based on all the available information and was not in any way a statement made with reckless disregard for the actual facts that the officers were faced with that night. Thus, none of the three statements that Townsend currently challenges were made with "serious doubts as to the truth of the allegations or had obvious reasons to doubt the veracity of the allegations," and we reject his challenge to the statements made in the affidavit. *See Anderson*, 138 Wis. 2d at 463.

¶25 Nevertheless, even if the three statements from the affidavit that Townsend challenges are removed, the affidavit still establishes probable cause to issue the search warrant. Probable cause for a search warrant is established when "under the totality of the circumstances, given all the facts and circumstances set forth in the affidavit, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *State v. Sveum*, 2010 WI 92, ¶24, 328

Wis. 2d 369, 787 N.W.2d 317 (citations omitted). We give "great deference to the warrant-issuing judge's determination of probable cause and that determination will stand unless the defendant establishes that the facts are clearly insufficient to support a finding of probable cause." *Id.*, ¶25 (citation omitted).

¶26 Without the three challenged statements, the affidavit describes the discovery of Williams' body in the kitchen of her home with gunshot wounds, the list of missing items that Williams' daughter provided to the police, the discovery of Williams' missing vehicle with plates registered to Townsend and a TV in the vehicle at 2750 North 53rd Street, and a statement that police found Antonio standing near the vehicle, spoke to Antonio, and Antonio confirmed that Townsend was his wife's brother. The affidavit then continues:

> Based on all of this information the affiant believes that evidence of the crime of Homicide will be located in the residence of 2750 N. 53rd Street for the following reasons:
>
> a) The victims vehicle was located in the rear of the residence "2750 N 53rd St[.]"
>
> b) A television set is located within the victim's vehicle at 2750 N 53rd St. and (2) televisions were taken from the victim's residence the day of the homicide.
>
> c) The registration plates on the victim's car were switched to registration plates belonging to Deandre [sic] T. Townsend[.]
>
> d) Townsend was the only person hesitant to comply with the police and exit the residence.
>
> e) Milwaukee Police Detectives and Officers froze the scene for a search warrant.

¶27 After removing the challenged statements, the affidavit still establishes a connection between Townsend and Williams' death and robbery because Williams' vehicle was found with license plates registered to Townsend

12

and a TV. There is also a connection established to the residence at issue based on where the vehicle was located. Thus, under the totality of the circumstances provided in the affidavit, there is a fair probability that the police would find evidence of criminal activity related to Williams' death and robbery in the residence, and the affidavit establishes probable cause to issue the search warrant. *See id.*

¶28 Accordingly, we reject Townsend's challenges to the trial court's denial of his motions, and we affirm.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2021-22).