

OFFICE OF THE CLERK
# WISCONSIN COURT OF APPEALS
110 EAST MAIN STREET, SUITE 215
P.O. BOX 1688
MADISON, WISCONSIN 53701-1688
Telephone (608) 266-1880
TTY: (800) 947-3529
Facsimile (608) 267-0640
Web Site: www.wicourts.gov

## DISTRICT III

April 7, 2026

*To*:

Hon. Kendall M. Kelley
Circuit Court Judge
Electronic Notice

John VanderLeest
Clerk of Circuit Court
Brown County Courthouse
Electronic Notice

Ryan Spaude
Electronic Notice

Dennis J. Sheskey
Electronic Notice

You are hereby notified that the Court has entered the following opinion and order:

---

2024AP1113        Brown County v. Dennis J. Sheskey
(L. C. No. 2018TR4737)

Before Stark, P.J.[1]

**Summary disposition orders may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

Dennis J. Sheskey, pro se, appeals from a judgment, entered pursuant to his no-contest plea, convicting him of operating a motor vehicle while intoxicated (OWI), as a first offense. During the OWI investigation, law enforcement applied for a warrant to obtain a sample of Sheskey's blood, the warrant was granted, and a blood draw was performed. On appeal, Sheskey argues that the circuit court erred by failing to grant him a hearing on his ***Franks-Mann*** motion

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

to suppress the results of his blood draw and by failing to address his allegation that the oral recording of the warrant application was missing. *See Franks v. Delaware*, 438 U.S. 154, 155-56 (1978); *State v. Mann*, 123 Wis. 2d 375, 385-86, 367 N.W.2d 209 (1985). Based upon our review of the briefs and record, we conclude that this case is appropriate for summary disposition. *See* WIS. STAT. RULE 809.21. For the reasons explained below, we summarily affirm.

On June 6, 2018, Sheskey was involved in a one-vehicle, rollover accident on State Highway 172 in the Village of Ashwaubenon, Wisconsin. Brown County Sheriff's Deputy Nicholas Nerat was dispatched to the scene at 1:33 a.m. While on the scene of the accident, Nerat made contact with Sheskey, who had been driving the vehicle. Nerat observed that Sheskey had suffered an injury to his head; "his eyes were glossy"; "he was confused"; his speech was slurred; "his route of travel was not consistent with" where he said he was going; and he had "trouble with his gait, which is his balance, as he walked to the rear of the vehicle." When asked, Sheskey denied drinking any alcohol, but he did admit to taking prescription medications, which he believed "were all okay to be operating a vehicle under the influence of those … prescription drugs." Given the "unexplained crash" and "noticing some signs of impairment," Nerat chose to continue investigating the crash as an OWI investigation.

Sheskey was subsequently transported to the hospital, and after Nerat completed his investigation at the scene, he again made contact with Sheskey. Given their close proximity at the hospital, Nerat "was now able to detect an odor of intoxicants as [Sheskey] spoke with [him]" and "was able to observe the presence of horizontal gaze nystagmus [(HGN)] while he laid on the bed." Nerat asked Sheskey again whether he had consumed any alcohol that evening, and, this time, Sheskey stated that he had "three beers." Nerat then requested that Sheskey

perform standardized field sobriety tests (SFSTs), which Nerat acknowledged "would have been a little different" because Sheskey "was injured and in a neck brace," but Sheskey "refused to do any [SFSTs] at that point."

Based on his observations up to that point, including the circumstances of the accident, Nerat placed Sheskey under arrest for OWI. Nerat read Sheskey the Informing the Accused form, *see* WIS. STAT. § 343.305(4), and Sheskey refused to submit to a chemical test of his blood. Nerat thereafter applied for a warrant to draw Sheskey's blood, which included a digitally signed affidavit, and a judge granted the search warrant. Sheskey's blood was then drawn at the hospital.[2]

Brown County subsequently issued citations to Sheskey for OWI, as a first offense; operating a motor vehicle with a prohibited alcohol concentration, as a first offense; and failure to keep his vehicle under control. *See* Brown County Case Nos. 2018TR5788, 2018TR4736, 2018TR4737. Sheskey proceeded to file multiple motions challenging several aspects of the case, including, as relevant to this appeal, challenging the search warrant issued for his blood draw on multiple different bases. According to the record, the circuit court addressed Sheskey's motions at multiple hearings.

On May 26, 2021, the circuit court held a jury trial, where Sheskey proceeded pro se, but Sheskey suffered a medical event during the trial and was unable to continue. The court declared a mistrial. Eventually, Sheskey retained counsel, but counsel withdrew about a month later.

---

[2] We note that the blood test result does not appear to be included in the record.

3

On March 22, 2023, Sheskey filed another motion challenging the search warrant, which for the first time referenced "*Franks*" and alleged "false assertions" in the warrant affidavit. The County objected to Sheskey's request for a *Franks-Mann* hearing based on his failure to make "the initial showing required by law." The circuit court addressed and denied this motion at a motion hearing on August 18, 2023. The minutes from that hearing state that the court found Sheskey's *Franks-Mann* motion to be insufficient and found that the issues addressed in that motion had "already been brought up and address[ed]."

Thereafter, Sheskey retained counsel for a second time, and on April 8, 2024, Sheskey, by counsel, filed another motion to suppress evidence based on a *Franks-Mann* violation. According to the motion, the search warrant affidavit contained material omissions of fact because it "alleged that Mr. Sheskey refused to submit to field sobriety tests. However, Mr. Sheskey was clearly not in a position to attempt field sobriety tests" because he "was in a hospital bed with a neck brace on at the time field sobriety tests were requested." The State responded with a motion to quash, asserting that this issue had already been decided. Ultimately, Sheskey entered a no-contest plea to first-offense OWI, a forfeiture was ordered, and the remaining charges were dismissed. Sheskey appeals.[3] *See* WIS. STAT. § 971.31(10).

---

[3] We pause to note that Sheskey is a pro se litigant, and he fails to comply with many of the Rules of Appellate Procedure in his briefs. *See* WIS. STAT. RULE 809.19. We are mindful of the challenges faced by self-represented litigants; however, Sheskey is still required to comply with relevant rules of procedural and substantive law and "to make a reasonable investigation of the facts and the law" before filing an appellate brief. *See Holz v. Busy Bees Contracting, Inc.*, 223 Wis. 2d 598, 608, 589 N.W.2d 633 (Ct. App. 1998); *Waushara County v. Graf*, 166 Wis. 2d 442, 452, 480 N.W.2d 16 (1992) ("*Pro se* appellants must satisfy all procedural requirements, unless those requirements are waived by the court. They are bound by the same rules that apply to attorneys on appeal. The right to self-representation is '[not] a license not to comply with relevant rules of procedural and substantive law.'" (alteration in original; citation omitted)).

(continued)

4

On appeal, Sheskey argues that the circuit court erred by failing to grant him a hearing on his motions challenging the search warrant in this case. According to Sheskey, the evidence he submitted to the circuit court justified an evidentiary hearing to address the missing oral portion of the search warrant application, pursuant to *State v. Raflik*, 2001 WI 129, 248 Wis. 2d 593, 636 N.W.2d 690, and to address his *Franks-Mann* motion, which asserted that the search warrant application contained statements that were knowingly false or made with reckless disregard for the truth. We reject Sheskey's arguments.

We first address Sheskey's arguments with regard to his *Franks-Mann* motion. As the appellant, Sheskey bears the burden of demonstrating that the circuit court erred. *See Gaethke v. Pozder*, 2017 WI App 38, ¶36, 376 Wis. 2d 448, 899 N.W.2d 381. Our review of the circuit court's denial of Sheskey's suppression motion without a *Franks-Mann* hearing is de novo. *See State v. Jones*, 2002 WI App 196, ¶25, 257 Wis. 2d 319, 651 N.W.2d 305.[4] Accordingly, we consider the same written submissions that the circuit court reviewed. To determine whether a defendant is entitled to a hearing on a *Franks-Mann* motion, we must determine whether the motion makes "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant

---

We also note that the County's appellate briefs are deficient because many of the factual assertions are unsupported by appropriate references to the record, as required by WIS. STAT. RULE 809.19(1)(d)-(e). Failure to follow these rules unnecessarily adds to the work of this high-volume court. We admonish Sheskey and the County that future violations of the Rules of Appellate Procedure may result in sanctions. *See* WIS. STAT. RULE 809.83(2).

[4] We note that the County incorrectly argues on appeal that we are to review the circuit court's decisions in this case for an erroneous exercise of discretion, but it fails to cite any legal authority for that proposition. As noted above, we review the court's decision on whether to grant a hearing on a *Franks-Mann* motion de novo. *See State v. Jones*, 2002 WI App 196, ¶25, 257 Wis. 2d 319, 651 N.W.2d 305. As a result of the County's error, it submitted a perfunctory response brief, arguing simply that Sheskey "ha[d] not provided an adequate record" without addressing any of Sheskey's arguments.

affidavit and that the allegedly false statement is necessary to the finding of probable cause." *State v. Anderson*, 138 Wis. 2d 451, 462, 406 N.W.2d 398 (1987). "The *Franks* rule was extended in [*Mann*] to include omissions from a warrant affidavit if the omissions are the equivalent of deliberate falsehoods or reckless disregard for the truth," but the omitted fact "must be an undisputed fact that is critical to an impartial judge's fair determination of probable cause." *Jones*, 257 Wis. 2d 319, ¶25 (citation omitted).

Based on our review of the record, we note that the circuit court addressed Sheskey's arguments that formed the basis for his later *Franks-Mann* motions at several hearings and denied each motion. However, there are no transcripts in the record for any of these hearings. Therefore, to the extent that Sheskey is generally arguing that the court failed to hold a hearing on his motions, he is incorrect.

To the extent Sheskey's arguments on appeal are specifically challenging the circuit court's failure to hold a hearing on Sheskey's April 8, 2024 *Franks-Mann* motion filed by counsel, we note that in that motion, Sheskey was simply rearguing for suppression of the blood draw evidence, and the court is not required to repeatedly consider the same issues in different motions. *See State v. Casteel*, 2001 WI App 188, ¶23, 247 Wis. 2d 451, 634 N.W.2d 338 ("A court may exercise its inherent power to ensure that it 'functions efficiently and effectively to provide the fair administration of justice,' and to control its docket with economy of time and effort." (citation omitted)); *see also State v. Escalona-Naranjo*, 185 Wis. 2d 168, 181-82, 517 N.W.2d 157 (1994) (requiring that a defendant bring all bases for postconviction challenge in one motion); *State v. Witkowski*, 163 Wis. 2d 985, 990, 473 N.W.2d 512 (Ct. App. 1991) ("A matter once litigated may not be relitigated in a subsequent postconviction proceeding no matter how artfully the defendant may rephrase the issue."). Given the lack of any transcripts in the

appellate record, we cannot discern which issues raised in the April 8, 2024 motion were previously considered or adjudicated. The fair and efficient administration of justice does not permit a party to engage in serial, duplicative motion practice and fail to provide the very transcripts necessary for appellate review while subsequently arguing that the court erred by not holding a hearing on a potentially redundant filing.

Further, to the extent that Sheskey is arguing that he was entitled to an *evidentiary* hearing on his *Franks-Mann* motions, we agree with the circuit court that an evidentiary hearing was not required because we conclude that Sheskey failed to make a "substantial preliminary showing" under the *Franks-Mann* standard. Initially, we note that Sheskey's March 22, 2023 motion, which was the first time Sheskey sought a *Franks-Mann* hearing, included only the following allegation: "Officer Nerat's Incident Report directly contradicts his assertion in the Warrant Affidavit and without his false assertions there is no probable cause as no one else claims evidence of intoxication. Defendant, by the stated evidence, has established his Motion is not a 'fishing expedition.'" This motion lacks any information to explain what specific "false assertions" Nerat allegedly made, how those alleged false assertions were made knowingly and intentionally or with reckless disregard for the truth, or why any of the alleged false assertions were necessary to the finding of probable cause. *See Anderson*, 138 Wis. 2d at 462. We could affirm the circuit court's denial of a *Franks-Mann* hearing on this basis alone.

On appeal, however, Sheskey asserts, as it relates to the *Franks-Mann* motion, that he "concluded his rights had been violated based on the following": (1) an emergency medical technician (EMT), who provided medical care to Sheskey on the scene of the accident, gave Sheskey a preliminary breath test (PBT) for medical reasons and shared those results with law enforcement—which Sheskey calls "an apparent [Health Insurance Portability and

7

Accountability Act (HIPAA)] violation"; (2) "Nerat acknowledge[d] knowing a PBT was given to Sheskey [in Nerat's incident report] but then denied a PBT was given in [Nerat's warrant] affidavit"; and (3) "Nerat['s] actions concerning the PBT are probable cause he knew or suspected getting the PBT information was a [HIPAA] violation," and "there is probable cause to conclude Deputy Nerat's 'observations of impairment' are false or reckless statements made to conceal his knowledge a PBT was given."[5]  These assertions, although not included in his March 22, 2023 ***Franks*-*Mann*** motion, were generally argued before the circuit court in his other motions seeking to suppress the blood draw evidence.  Therefore, for the sake of finality, we will address Sheskey's above arguments.

First, Sheskey does not provide any legal authority on appeal or in any of his numerous motions before the circuit court to support his arguments regarding a HIPAA violation or its alleged impact on this case, i.e., how a HIPAA violation would "jeopardize an arrest."  *See **State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

Next, Sheskey asserts that Nerat made misrepresentations in the warrant affidavit because he did not indicate that a PBT was administered to Sheskey, but we conclude that this omission

---

[5] Sheskey also argued that Nerat's assertion in the warrant affidavit that "[a]s [Sheskey] was lying in the hospital bed, I observed HGN in his eyes," was a "knowingly false statement and/or recklessly disregards the truth."  Before the circuit court, Sheskey argued that "Deputy Nerat states seeing HGN in the Defendant[']s eyes as signs of intoxication," but "HGN can only be determined by a series of tests and cannot be detected by casual observation."  He does not support this statement with citation to any authority, legal or otherwise.  *See **State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (stating that the court of appeals need not address undeveloped arguments or arguments unsupported by references to legal authority).  Instead, Sheskey misunderstands that "[n]ystagmus" is merely defined as "[a] rapid, involuntary jerking or twitching of the eyes, sometimes caused by ingesting drugs or alcohol."  *Nystagmus*, BLACK'S LAW DICTIONARY (12th ed. 2024).  Thus, what Nerat stated in the warrant affidavit was that he observed a rapid, involuntary jerking or twitching of Sheskey's eyes.  Sheskey does not sufficiently allege how or why Nerat's assertion might have been false.

was neither a false statement nor an omission that was necessary to the finding of probable cause. The purpose of a search warrant affidavit is to set forth the facts that the affiant believes support a finding of probable cause. As noted above, Nerat did not administer the PBT, and he stated in his incident report that he was told only that "alcohol was present." Thus, the fact that Nerat did not include information regarding a PBT, which Sheskey asserts was given by an EMT, does not imply that Nerat either made a false statement or an omission that was critical to a fair determination of probable cause. Further, Nerat alleged legal grounds independent of the PBT to support the search warrant. Accordingly, Sheskey has failed to make the required substantial preliminary showing.

Finally, even without the information Sheskey objects to in the warrant affidavit related to the PBT, we would still conclude that the search warrant was supported by probable cause. "Probable cause supporting a search warrant is determined by the totality of the circumstances" and asks whether there is a fair probability that contraband or evidence of a crime will be found in a particular place, given all of the facts set forth in the search warrant affidavit and reasonable inferences from those facts. *Jones*, 257 Wis. 2d 319, ¶10.

Because Sheskey claims that Nerat's observations of impairment, made after he was told about the PBT, were "false or reckless statements made to conceal his knowledge a PBT was given," we will consider only the evidence collected before Sheskey went to the hospital. At that time, Nerat was aware of the following: (1) Sheskey was involved in a one-vehicle, rollover accident; (2) the accident occurred around "bar time," 1:30 a.m.; (3) Sheskey's eyes were glossy; (4) he appeared confused and his speech was slurred; (5) he admitted to taking prescription medication; (6) his route of travel was not consistent with where he said he was going; (7) he had issues with his balance when he was walking outside of the car; and (8) there was no explanation

for what caused the vehicle crash. *See, e.g.*, ***State v. Lange***, 2009 WI 49, ¶32, 317 Wis. 2d 383, 766 N.W.2d 551 (time of night of traffic stop is a relevant factor in an OWI investigation); ***State v. Kasian***, 207 Wis. 2d 611, 622, 558 N.W.2d 687 (Ct. App. 1996) (probable cause existed when the officer knew that Kasian had been in a one-vehicle accident, smelled the odor of intoxicants, and observed that Kasian's speech was slurred); ***State v. Nieves***, 2007 WI App 189, ¶14, 304 Wis. 2d 182, 738 N.W.2d 125 ("[A]n officer is not required to draw a reasonable inference that favors innocence when there also is a reasonable inference that favors probable cause.").

These observations were sufficient, absent Nerat's observations at the hospital, to establish probable cause for the purpose of obtaining a warrant to draw Sheskey's blood. Said differently, none of the alleged false statements or omissions that Sheskey argues that Nerat made in the affidavit were necessary to the finding of probable cause. *See **Franks***, 438 U.S. at 155-56; ***Mann***, 123 Wis. 2d at 378, 385-90.

We next address Sheskey's argument that "the [circuit] court never addressed the question of whether the missing oral portion of the warrant application violated Sheskey's constitutional rights," and "no evidence was submitted explaining why no effort was made to recover or reconstruct the missing oral portion of the warrant application." Sheskey first made this argument before the circuit court in his February 11, 2019 motion. He argued it again in his February 20, 2020 motion, in his October 23, 2020 motion, and addressed it again in his February 1, 2021 motion. Based on our review of the record, the circuit court addressed these motions at several hearings and denied each motion. However, as we noted above, there are no transcripts in the record for any of these hearings, and Sheskey stated that no transcripts were "necessary for prosecution of this appeal."

It is the appellant's responsibility to ensure that the record on appeal is complete, and any missing material is presumed to support the circuit court's ruling. *Fiumefreddo v. McLean*, 174 Wis. 2d 10, 26-27, 496 N.W.2d 226 (Ct. App. 1993). Without the transcripts of the hearings, which would establish what motions or arguments were addressed by the court and would contain the court's reasoning for denying Sheskey's motions, we must assume both that the court sufficiently addressed the arguments in Sheskey's motions and that the missing transcripts support the court's rulings. *See id.*

Further, although Sheskey argued about the oral recording of the warrant application before the circuit court, he failed to argue that the court's holding in *Raflik* applied to this case. *See State v. Rogers*, 196 Wis. 2d 817, 827, 539 N.W.2d 897 (Ct. App. 1995) ("We will not … blindside [circuit] courts with reversals based on theories which did not originate in their forum."). Sheskey likewise fails to develop an argument before this court as to how and why *Raflik* is applicable here or how and why the circuit court erred by denying Sheskey's motions. *See Pettit*, 171 Wis. 2d at 646-47. It is not our responsibility to develop arguments for a party, "and we will not abandon our neutrality" to do so for Sheskey; we cannot serve as both advocate and judge. *See id.*; *Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82. Accordingly, Sheskey has failed to meet his burden on appeal, and we summarily affirm the circuit court's judgment of conviction.

Therefore,

IT IS ORDERED that the judgment is summarily affirmed. WIS. STAT. RULE 809.21.

11

IT IS FURTHER ORDERED that this summary disposition order will not be published.

---

*Samuel A. Christensen*
*Clerk of Court of Appeals*